IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BIO TOWN AG, INC., <br><br> Plaintiff, <br> v. <br><br> LIVESTOCK WATER RECYCLING, INC., <br><br> Defendant. | CASE NO.:  18-CV-78 <br><br> **JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff Bio Town AG, Inc., by and through its undersigned attorneys, for its complaint against Livestock Water Recycling, Inc., hereby alleges as follows:

## PARTIES

1.  Plaintiff Bio Town AG, Inc. ("Bio Town") is an Indiana corporation with a principal place of business located at 402 W. 100 N., Reynolds, Indiana 47980.  Bio Town is a family-owned farm with livestock operations of 5,200 head of beef cattle and 1,000 head of sow and swine.  Bio Town also operates an anerobic digester that recycles animal waste and other organic by-products to produce electric power, fertilizer and soil.

2.  Defendant Livestock Water Recycling, Inc. ("LWR") is a Canadian corporation with a principal place of business located at 5842 86th Avenue SE, Unit 210, Calgary, Alberta T2C 4L7, Canada.  LWR advertises, markets and sells a system that it purports can recycle liquid manure and biowaste into clean, usable water.

## JURISIDICTION AND VENUE

3. This contract action involves the purchase by Bio Town, an Indiana corporation, of a manure treatment and water reclamation system sold by LWR, a Canadian corporation. The subject manure treatment and water reclamation system was shipped to and used in Reynolds, Indiana in this judicial district.

4. Bio Town conducted negotiations and correspondence for the purchase of the subject system from its offices in Reynolds, Indiana in this judicial district. In negotiating the contract at issue in this matter, LWR directed all communications to Bio Town's offices in Reynolds, Indiana.

5. LWR advertises, markets and sells its system in this judicial district and throughout the United States. LWR claims on its website to have installed and operated its manure treatment and water reclamation systems throughout the United States.

6. This Court has subject matter jurisdiction over Bio Town's claims in this action pursuant to 28 U.S.C. § 1332(a)(2), diversity of citizenship, because the amount in controversy is in excess of $75,000 and is between a citizen of a state (Indiana) and a citizen or subject of a foreign state (Canada).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c)(3) because LWR is a defendant not resident in the United States, and may be sued in any judicial district, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events alleged in this action occurred in this judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

8. In approximately January 2013, Bio Town became aware of LWR and asked for more information on LWR's manure treatment and water reclamation systems. Bio Town advised LWR that it produced 30 million gallons of liquid manure waste ("digestate") annually.

9. On January 14, 2013, LWR provided a "Proposal for the Supply of a Digestate Treatment System for 30 Million Gallons Annually." Exhibit 1 ("Proposal"). LWR's Proposal noted Bio Town's specific needs and details of its operations, including that Bio Town operates a "mixed waste bio-digester in Reynolds, Indiana, that currently produces 30 million gallons of digestate annually." Id. at 3.

10. LWR's Proposal noted that Bio Town's existing process required transporting digestate onto neighboring land at a cost of $0.02/gallon, and that Bio Town desired to extract water from the digestate to reduce volume and hauling costs. Id.

11. In its Proposal, LWR represented that its system could convert 75% of Bio Town's digestate into clean, usable water. Id. LWR also represented that the remaining percentage of the digestate would be converted into a usable liquid nutrient (15%) and a usable solid (10%). Id.

12. LWR represented that installation and set up of its manure treatment and water reclamation system was a simple and "straight forward process." Id. at 5.

13. LWR noted that it would be on site in Reynolds, Indiana for the initial commissioning of the system, and would provide a technician for start-up, commissioning and training services. Id.

14. LWR's Proposal also stated: "It is anticipated your costs will be between 0.7 of a cent and 2 cents per gallon." Id. at 8. The Proposal also stated: "Testing indicates the chemical

3

consumption for this will be USD $0.015 - $0.018/gallon based on lab testing material submitted by Biotown Ag." Id.

15. LWR proposed providing an LWR-40 system for $853,000, or a refurbished LWR-40 system for $753,000. Id. at 9.

16. Based on the general concepts of the Proposal, Brian Furrer on behalf of Bio Town informed LWR that Bio Town was interested in exploring further the potential of Bio Town purchasing a LWR water reclamation system. However, given that Bio Town's current cost to dispose of digestate was $0.02 per gallon, Mr. Furrer informed Ross Thurston of LWR that Bio Town was not interested in purchasing a system if the ongoing cost to operate the system and treat digestate could be up to $0.02 per gallon of treated digestate, as stated in the Proposal.

17. If the system could not provide a defined cost savings to Bio Town, Mr. Furrer informed Mr. Ross that Bio Town was not interested in purchasing the system. Otherwise, the system would simply add costs, both in terms of its purchase price and in operation.

18. In response, Mr. Ross agreed to provide a system that would provide a defined cost savings to Bio Town in its current operations.

19. On March 1, 2013, Brian Furrer on behalf of Bio Town and Ross Thurston on behalf of LWR reached an oral agreement on the material terms of Bio Town's purchase of a refurbished LWR-40 system from LWR, including the volume flow of digestate that the system would be capable of treating and the cost to treat the digestate.

20. The parties' oral agreement was memorialized in an email from Mr. Thurston to Mr. Furrer at 7:03 p.m. on March 1, 2013, which is attached as Exhibit 2.

21. In the email, Mr. Thurston confirmed the parties' agreement on the following material terms:

    a. LWR would supply Bio Town with a refurbished LWR-40 system (product);

    b. The purchase price for the system would be $735,000 (price);

    c. The system would be available for pick up 45 days from payment of a deposit (delivery); and

    d. Bio Town would provide payments of "roughly $165,000 each 15 days to the 45 days. At that time the system is operating we will receive another $235,000." (terms of payment/performance).

22. Mr. Thurston also confirmed the parties' agreement that the refurbished LWR-40 system "will treat at 60 gpm. The chemical costs are to be 1.5 cents per gallon US," meaning that the LWR system would treat 60 gallons of digestate per minute at a cost in chemicals of $0.015 per gallon (express warranty).

23. In reliance on the promises made by LWR representatives that the LWR-40 system would treat 60 gallons of digestate per minute at a cost in chemicals of $0.015 per gallon, and LWR's representations that the LWR-40 system was fit for Bio Town's particular purposes, Bio Town agreed to purchase the refurbished LWR-40 system.

24. Bio Town performed as agreed by the parties, providing a deposit payment of $170,000 on March 8, 2013, a second payment of $170,000 on March 29, 2013 and a third payment of $160,000 on April 30, 2013.

25. On approximately April 19, 2013, LWR provided a draft written agreement to Bio Town, Exhibit 3, and requested that Bio Town sign and return the draft agreement. Because the

draft agreement attempted to incorporate by reference provisions to which the parties had not agreed, Bio Town refused to sign and return the agreement.

26. In particular, the draft agreement attempted to incorporate by reference LWR's "Proposal for the Supply of a Digestate Treatment System for 30 Million Gallons Annually," Exhibit 1, including the "Standard Terms and Conditions of Sale" included with the Proposal.

27. Bio Town objected to incorporating the Proposal as part of the signed Agreement because the Proposal included the provisions that Bio Town's costs could be up to $0.02 per gallon to operate the system (with chemical costs up to $0.018 per gallon), which contradicted the express promise and warrantee made by Mr. Thurston of LWR that Bio Town's chemical costs would not exceed $0.015 per gallon.

28. Bio Town also objected to incorporating the Proposal as part of the signed Agreement because the Standard Terms and Conditions of Sale provided only a warrantee that the equipment sold would be free of defects, and expressly disclaimed all other warranties, including Mr. Thurston's express warrantee that the system would be capable of treating 60 gallons of digestate per minute at a cost of $0.015 per gallon in chemicals, and agreed to as a condition of purchase between the parties. See Exhibit 1 at 12.

29. Accordingly, Bio Town refused to sign the draft agreement, and has continued to refuse to sign any agreement that would disclaim the performance and cost warrantees previously provided by LWR.

30. Bio Town received and accepted delivery of the refurbished LWR-40 system in approximately April of 2013, and began installation of the system.

31. In the remainder of 2013, Bio Town paid to LWR additional periodic payments totaling $238,979.75, making Bio Town's total payments to LWR $738,979.75.

32.     On November 22, 2013, Bio Town signed a promissory note to IWR Technologies Ltd., an LWR related company, for $395,500.00 to cover the remainder of the purchase price for the refurbished LWR-40 system, and additional invoices from LWR for start up consumables, onsite start up service, and installation labor.

33.     LWR employees and agents visited Bio Town multiple times to assist with the installation and troubleshooting of the system.  The LWR system, however, never functioned as promised and never performed to the level promised and guaranteed by LWR.

34.     From the beginning, the LWR system was not operable, and could not convert liquid manure waste into clean, usable water.  Hoses exploded, pumps did not work and had to be repaired and filters did not function as intended in the system.

35.     LWR provided an independent contractor, JAR Environmental, to assist with repairs to the system and to make the system operational.  LWR, however, failed to pay JAR Environmental, requiring Bio Town to pay the contractor.

36.     Even when functioning, the LWR-40 system could not function and perform as promised by LWR.  The LWR-40 system could not process 60 gallons of digestate per minute as promised by LWR and required by Bio Town.  In fact, the system could never process more than 10 gallons of digestate per minute.

37.     The LWR-40 system also could not function and perform at the cost level promised and warranted by LWR.  The chemical costs to process digestate were $0.04 to $0.05 per gallon, far in excess of the $0.015 per gallon cost promised and by LWR and required by Bio Town.

38. On information and belief, LWR knew that the LWR-40 system could not process 60 gallons of digestate per minute at a chemical cost of $0.015 per gallon at the time it sold the system to Bio Town.

39. Bio Town has repeatedly informed LWR of the failures and deficiencies of the refurbished LWR-40, but LWR has been unwilling and/or unable to correct the failures and deficiencies.

40. LWR has repeatedly informed Bio Town that the LWR-40 system could be fixed and made operational as originally promised. In reliance on LWR's representations, Bio Town has paid JAR Environmental in excess of $180,000. In addition, Bio Town has spent over $80,000 with other outside vendors and incurred over $150,000 in internal labor costs in attempts to make the LWR-40 system operational and functional. Despite Bio Town's efforts and the additional costs incurred, the LWR-40 system is not operational, and cannot perform as promised by LWR and relied upon by Bio Town.

41. In addition to Bio Town's incidental costs, Bio Town has also suffered significant lost profits and consequential damages due to the inoperability of the LWR-40 system. For example, since late 2013, Bio Town has not received the benefit of its bargain with LWR that Bio Town would have an operational digestate treatment system capable of producing and providing 60 gallons per minute of clean, usable water.

42. At a replacement cost of approximately $0.02 per gallon for clean water, Bio Town has suffered in excess of $3,000,000 in lost profits and consequential damages as a direct and proximate result of LWR's failure to provide an operational and functional digestate treatment system. Bio Town's lost profits and consequential damages continue to increase as a direct and proximate result of the inoperability of the LWR system.

## COUNT I
## BREACH OF CONTRACT

43. Bio Town realleges and incorporates by reference the allegations in Paragraphs 1-42.

44. The parties Bio Town and LWR entered an agreement on March 1, 2013 for the purchase by Bio Town of a refurbished LWR-40 manure treatment and water reclamation system and reduced that agreement to writing through the exchange of email. Exhibit 2.

45. The parties' agreement included all material terms including the product, price, delivery and terms of payment.

46. The parties' agreement also included that the LWR-40 system to be purchased by Bio Town could treat 60 gallons of digestate per minute and produce clean, usable water for use in Bio Town's farming operations.

47. Prior to reaching agreement, Bio Town advised LWR representatives that it needed a system that could treat 30 million gallons of digestate annually.

48. Prior to reaching agreement, Bio Town advised LWR representatives that the cost to operate the system needed to be significantly less than $0.02 per gallon of treated digestate.

49. LWR understood Bio Town's specific needs, and recommended a refurbished LWR-40 system, which Bio Town purchased.

50. Bio Town performed its obligations under the agreement, including the payment to LWR of $738,979.75 and the execution of a promissory note for $395,500.00 to cover the remainder of the purchase price.

51. LWR failed to perform its obligations under the parties' agreement, including the following:

    a.    Failing to provide a liquid manure treatment and water reclamation system that was operational and functional;

    b.    Failing to provide a system that could treat Bio Town's production of 30 million gallons of digestate annually;

    c.    Failing to provide a system that could treat 60 gallons per minute of digestate and produce clean, usable water for use in Bio Town's farming operations;

    d.    Failing to provide a system that could operate at a cost significantly less than $0.02 per gallon of treated digestate.

    e.    Failing to cure the deficiencies in the LWR-40 system delivered to Bio Town.

52.    As a direct and proximate cause of LWR's breach of the parties' agreement, Bio Town was damaged and continues to be damaged.

53.    Bio Town has suffered significant financial losses as a result of LWR's breach of the parties' agreement, including the incidental and consequential damages identified above.

ACCORDINGLY, Bio Town requests judgment against LWR in amount adequate to compensate Bio Town for its losses resulting from LWR's breach of contract, presently estimated to be in excess of $3.5 million, requiring payment to Bio Town for the costs of this action, for all other just and proper relief and, to the extent applicable, Bio Town's attorney fees.

IN THE ALTERNATIVE, Bio Town requests a judgment rescinding the agreement between Bio Town and LWR, ordering the return of all monies paid by Bio Town to LWR, requiring payment to Bio Town for the costs of this action, for all other just and proper relief and, to the extent applicable, payment of Bio Town's attorney fees.

## COUNT II
## BREACH OF EXPRESS WARRANTY

54. Bio Town realleges and incorporates by reference the allegations in Paragraphs 1-53 above.

55. Prior to reaching agreement on the purchase of manure treatment and water reclamation system, Bio Town informed LWR of its specific needs and requirements for the treatment of biowaste from its operations, including the amount of waste generated, the source of the waste, its desire to reclaim water for use in its farming operations and other specific details on its farming and anaerobic digester operations.

56. In negotiations and discussions with LWR for the purchase of a manure treatment and water reclamation system, LWR expressly represented that its refurbished LWR-40 manure treatment and water reclamation system could treat and handle Bio Town's digestate production, the specifics of which LWR had been advised.

57. In negotiations and discussions with LWR for the purchase of a manure treatment and water reclamation system, LWR expressly represented that its refurbished LWR manure treatment and water reclamation system could treat 60 gallons per minute of digestate and produce clean, usable water for Bio Town's farming operations.

58. Bio Town relied on LWR's representations regarding the performance and operation of its refurbished LWR-40 manure treatment and water reclamation system.

59. LWR's warranties regarding the operation and performance of its refurbished LWR-40 manure treatment and water reclamation system were incorporated into the parties' agreement on the purchase of the system, as reflected in the emails between the parties on March 1, 2013.  Exhibit 2.

60. LWR breached its express warranties on the performance, function and operation of its refurbished LWR-40 manure treatment and water reclamation system. The system was not functional, not operational, could not treat and handle Bio Town's production of digestate and could not produce clean, usable water for Bio Town's farming operation.

61. In addition, LWR failed to provide repairs and services to its system so that it could perform as expressly warranted.

62. Accordingly, LWR has breached its express warranties concerning the performance, function and operation of its refurbished LWR-40 manure treatment and water reclamation system.

63. The value of the LWR manure treatment and water reclamation system is substantially less than it would have been had it been in the condition as warranted and represented by LWR.

64. As a direct and proximate cause of LWR's breach of its express warranty, Bio Town was damaged and continues to be damaged.

65. Bio Town has suffered significant financial losses as a result of LWR's breach of express warranty, including the incidental and consequential damages identified above.

ACCORDINGLY, Bio Town requests judgment against LWR in amount adequate to compensate Bio Town for its losses resulting from LWR's breach of express warranty, presently estimated to be in excess of $3.5 million, requiring payment to Bio Town for the costs of this action, for all other just and proper relief and, to the extent applicable, Bio Town's attorney fees.

IN THE ALTERNATIVE, Bio Town requests a judgment rescinding the agreement between Bio Town and LWR, ordering the return of all monies paid by Bio Town to LWR,

requiring payment to Bio Town for the costs of this action, for all other just and proper relief and, to the extent applicable, payment of Bio Town's attorney fees.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Indiana Code § 26-1-2-314

66. Bio Town realleges and incorporates by reference the allegations in Paragraphs 1-65 above.

67. LWR is a merchant engaged in the business of selling manure treatment and water reclamation systems.

68. LWR's implied warranty of merchantability on the sale of the refurbished LWR-40 manure treatment and water reclamation system to Bio Town was not excluded or modified by agreement of the parties.

69. Accordingly, LWR provided an implied warranty of merchantability to Bio Town with the sale of the refurbished LWR-40 system.

70. LWR breached the warranty of merchantability because the refurbished LWR-40 manure treatment and water reclamation system did not pass without objection in the trade under the contract description, was not of fair or average quality and was not fit for the ordinary purpose for which such systems are used.

71. Under the usage in the trade, manure treatment and water reclamation systems are represented as being of a quality and condition fit for use without repair or replacement.

72. LWR breached the implied warranty of merchantability because the refurbished LWR-40 system was not fit for use without repair or replacement.

73. The value of the refurbished LWR-40 manure treatment and water reclamation system is substantially less than it would have been had it been of fair or average quality or if it was fit for the ordinary purpose for which such systems are used.

74. As a direct and proximate cause of LWR's breach of its implied warranty of merchantability, Bio Town was damaged and continues to be damaged.

75. Bio Town has suffered significant financial losses as a result of LWR's breach of its implied warranty of merchantability, including the incidental and consequential damages identified above.

ACCORDINGLY, Bio Town requests judgment against LWR in amount adequate to compensate Bio Town for its losses resulting from LWR's breach of the implied warranty of merchantability, presently estimated to be in excess of $3.5 million, requiring payment to Bio Town for the costs of this action, for all other just and proper relief and, to the extent applicable, Bio Town's attorney fees.

IN THE ALTERNATIVE, Bio Town requests a judgment rescinding the agreement between Bio Town and LWR, ordering the return of all monies paid by Bio Town to LWR, requiring payment to Bio Town for the costs of this action, for all other just and proper relief and, to the extent applicable, payment of Bio Town's attorney fees.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE
### Indiana Code § 26-1-2-315

76. Bio Town realleges and incorporates by reference the allegations in Paragraphs 1-75 above.

77. LWR is a merchant engaged in the business of selling manure treatment and water reclamation systems.

78. Prior to reaching agreement on the purchase of manure treatment and water reclamation system, Bio Town informed LWR of its specific needs and requirements for the treatment of biowaste from its operations, including the amount of waste generated, the source of the waste, its desire to reclaim water for use in its farming operations and other specific details on its farming and anaerobic digester operations.

79. LWR was aware that Bio Town was relying on LWR's skill and judgment to select and furnish a manure treatment and water reclamation system suitable for Bio Town's needs and operations, including the need for treatment of 60 gallons per minute of digestate and the production of clean, useable water from the system for use in Bio Town's farming operations.

80. Bio Town relied on LWR's skill and judgment to select and furnish a manure treatment and water reclamation system suitable for Bio Town's needs and operations, including:

   a. the need for treatment of 60 gallons per minute of digestate and the production of clean, useable water for Bio Town's farming operations; and

   b. the need for the cost to operate the system needed to be significantly less than $0.02 per gallon of treated digestate.

81. Accordingly, LWR provided an implied warranty that the refurbished LWR-40 system sold by LWR would fit for Bio Town's stated purposes.

82. LWR breached the implied warranty of fitness for a particular purpose because the refurbished LWR-40 manure treatment and water reclamation system was not suitable for the treatment of biowaste from Bio Town's operations, and

   a. could not treat 60 gallons per minute of digestate and produce clean, usable water for Bio Town's farming operations; and

      b.    could not operate at a cost significantly less than $0.02 per gallon of treated digestate.

83. The value of the refurbished LWR-40 manure treatment and water reclamation system is substantially less than it would have been had it been fit for Bio Town's particular purposes.

84. As a direct and proximate cause of LWR's breach of its implied warranty of fitness for a particular purpose, Bio Town was damaged and continues to be damaged.

85. Bio Town has suffered significant financial losses as a result of LWR's breach of its implied warranty of fitness for a particular purpose, including the incidental and consequential damages identified above.

ACCORDINGLY, Bio Town requests judgment against LWR in amount adequate to compensate Bio Town for its losses resulting from LWR's breach of the implied warranty of fitness for a particular purpose, presently estimated to be in excess of $3.5 million, requiring payment to Bio Town for the costs of this action, for all other just and proper relief and, to the extent applicable, Bio Town's attorney fees.

IN THE ALTERNATIVE, Bio Town requests a judgment rescinding the agreement between Bio Town and LWR, ordering the return of all monies paid by Bio Town to LWR, requiring payment to Bio Town for the costs of this action, for all other just and proper relief and, to the extent applicable, payment of Bio Town's attorney fees.

**JURY TRIAL DEMANDED**

Date:  **October 24, 2018**		Respectfully submitted,

/s/ Anthony E. Dowell
Anthony E. Dowell
aedowell@mccaulleydowell.com
Richard T. McCaulley
rmccaulley@mccaulleydowell.com
Kenley Eaglestone
keaglestone@mccaulleydowell.com
McCAULLEY DOWELL
550 W. Washington Blvd., Suite 201
Chicago, IL  60661
Phone: (773) 687-9886

**ATTORNEYS FOR PLAINTIFF
BIO TOWN AG, INC.**