## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION AT LAFAYETTE

BIO TOWN AG INC.,          )
                                  )
          Plaintiff,         )
                                  )
          v.                 )        No. 4:18 CV 78
                                  )
LIVESTOCK WATER        )
RECYCLING INC.,          )
                                  )
          Defendant.      )

## OPINION and ORDER

This matter is before the court on defendant's motion to dismiss on grounds of *forum non conveniens*. (DE # 15.) For the reasons identified below, the motion is denied.

## I.      BACKGROUND

Plaintiff Bio Town Ag, Inc. ("Bio Town") filed the present breach of contract suit against defendant Livestock Water Recycling, Inc. ("LWR"), alleging that a manure treatment and water reclamation system it purchased from LWR failed to operate as promised. (DE # 1.) In response, LWR filed a motion to dismiss, arguing that the parties' contract contained a forum-selection clause that mandates that this matter be litigated in Alberta, Canada. (DE # 15.) Bio Town disputes that the forum-selection clause was part of the parties' agreement. The following facts are undisputed, for purposes of resolving the pending motion to dismiss.

In January 2013, Bio Town contacted LWR for information on its manure treatment and water reclamation systems. (DE # 1 at 3.) On January 14, 2013, LWR provided Bio Town with a document entitled, "Proposal for the Supply of a Digestate

Treatment System for 30 Million Gallons Annually" ("the Proposal"). (*Id.*) In the

Proposal, LWR offered a refurbished treatment system for $753,000. (*Id.* at 4.) The

Proposal also stated that Bio Town's cost for operation of the water treatment system

could be as high as $0.02 per gallon, with a chemical cost of up to $0.018 per gallon. (*Id.*

at 3-4.)

The Proposal contained LWR's "Standard Terms and Conditions of Sale"

("Standard Terms"). (DE # 1-1 at 12-13.).[1] Clause 1 of the Standard Terms stated that the

Standard Terms would apply to any contract concluded with any purchaser, to the

exclusion of all other inconsistent terms and conditions. (*Id.* at 12.) Clause 2 of the

Standard Terms stated that the Standard Terms would apply whether the contract for

sale was concluded by LWR's acceptance of the purchaser's purchase order, or by

acceptance by the purchasers of LWR's Proposal. (*Id.*) The Standard Terms also stated

that the Standard Terms could only be modified upon written agreement by LWR. (*Id.*)

Finally, the Standard Terms contained a forum-selection clause, mandating that any

litigation between the parties be brought and maintained exclusively in the courts of

---

[1] Bio Town attached the Email, the Proposal, and a draft final agreement submitted from LWR to Bio Town, to its complaint as exhibits. "It is well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. This rule is a liberal one—especially where, as here, the plaintiff does not contest the validity or authenticity of the extraneous materials." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (internal quotation marks and citations omitted). *See also* Fed. R. Civ. P. 10(c). These documents are referred to in Bio Town's complaint and are central to its claims. Thus, the court may properly consider these documents as part of the pleadings.

Alberta, Canada. (*Id.* at 13.)

A representative from Bio Town expressed interest in purchasing a LWR water reclamation system, but on terms different than those contained in the Proposal. (DE # 1 at 4.) On March 1, 2013, representatives of Bio Town and LWR reached an oral agreement that was memorialized in an email ("the Email") later the same day. (DE # 1 at 4.) The subject-line of the email was: Verbal Go Ahead. (DE # 1-2.)

The terms the parties ultimately agreed to, as memorialized in the Email, were different than those contained in the Proposal in three material respects. First, the Proposal offered a refurbished water reclamation system for $753,000, but the parties ultimately agreed that Bio Town would purchase the system for $735,000. (*Id.*) The Proposal stated that Bio Town's on-going chemical cost would be as high as $0.018 per gallon, but the parties ultimately agreed that this cost would be $0.015 per gallon. (*Id.*) Finally, Bio Town argues that on March 1st the parties agreed to a warranty that was different than the warranty contained in the Proposal.

Bio Town made two deposit payments to LWR in March 2013. (DE # 1 at 5.) On April 19, 2013, around the time that the LWR system was delivered, LWR provided Bio Town with a document for Bio Town to sign. (DE # 1 at 5; DE # 1-3.) Bio Town characterizes the document as a "draft written agreement."[2] (DE # 1 at 4.) Bio Town objected to signing the Draft Agreement on the basis that it incorporated by reference

---

[2] The court will refer to this document as the "Draft Agreement," for purposes of clarity only; the court makes no finding regarding the operation of this document.

the Proposal, which contained terms that the parties had not agreed to, and that contradicted the terms of the parties' March 1st agreement; specifically, the warranty and cost provisions that the parties agreed to on March 1st. (*Id.* at 6.) LWR's position is that Bio Town accepted the terms of its Proposal when it reached an agreement on March 1st and the Draft Agreement merely formalized the terms to which the parties had already agreed. (DE # 16 at 6-7.) Despite Bio Town's refusal to sign the Draft Agreement, the parties proceeded with their relationship. (DE # 1 at 6.)

Bio Town subsequently brought the present lawsuit, alleging that LWR's water reclamation system failed to function in the manner guaranteed by LWR. (DE # 1.) LWR filed a motion to dismiss based on *forum non conveniens*. (DE # 15.) This matter is fully briefed and is ripe for ruling.

## II.    ANALYSIS

Bio Town, as the party resisting application of the forum-selection clause, bears the burden of establishing that transfer to Alberta is unwarranted. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) ("[T]he plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed."). This raises a predicate question, however, of whether the parties agreed to the forum-selection clause. Bio Town contends that it did not. Thus, the court must first determine whether the forum-selection clause was part of the parties' agreement.

Contractual interpretation is a substantive matter governed by state law. *Coplay*

*Cement Co. v. Willis & Paul Grp.*, 983 F.2d 1435, 1438 (7th Cir. 1993). The burden of proof

on a matter of state law, is governed by state law. *See James River Ins. Co. v. Kemper Cas.*

*Ins. Co.*, 585 F.3d 382, 384–85 (7th Cir. 2009); *Roberts & Schaefer Co. v. Merit Contracting,*

*Inc.*, 99 F.3d 248, n. 2 (7th Cir. 1996).

Under Indiana law, a party seeking to enforce a term of a contract bears the

burden of establishing the existence of the term in the parties' agreement. *See e.g.,*

*Gabriel v. Windsor, Inc.*, 843 N.E.2d 29, 45 (Ind. Ct. App. 2006) ("The party seeking

rescission of a contract bears the burden of proving his right to rescind and his ability to

return any property received under the contract."); *Sanford v. Castleton Health Care Ctr.,*

*LLC*, 813 N.E.2d 411, 416 (Ind. Ct. App. 2004) ("[U]nder Indiana contract law, the party

seeking to compel arbitration has the burden of demonstrating the existence of an

enforceable arbitration agreement."). Here, LWR concedes that it bears the burden of

establishing that the forum-selection clause was part of the parties' agreement. (DE # 16

at 3.)

The parties agree that there is a valid contract between them, entered into on

March 1st, and memorialized in the Email. The legal question in dispute is whether the

Proposal – and the Standard Terms contained therein – was part of the parties' March

1st agreement.[3] In essence, the parties disagree about the effect that their negotiations

---

[3] Believing there to be a factual dispute, this court referred this matter to the
Magistrate Judge. However, the parties' briefs and statements to the Magistrate Judge
make clear that they do not believe that a factual dispute exists for purposes of
resolving LWR's motion. Thus, the court will terminate the referral of this motion to the
Magistrate Judge and will resolve the question of law presented by the parties' dispute.

had on LWR's offer in the Proposal. Bio Town contends that the parties entered into an oral contract on March 1st, and the Email is a memorialization of all of the terms to which the parties reached an agreement. (DE # 17 at 3-4.) LWR, on the other hand, argues that Bio Town accepted LWR's offer in the Proposal, and the parties' March 1st agreement was a modification of the terms of the Proposal, as permitted by the Proposal. LWR contends that the parties did not intend that the Email would represent their entire agreement. (DE # 16 at 6.)

LWR has not sufficiently established that the terms of the Proposal were part of the parties' agreement. LWR has not established that the parties intended to be bound by the terms of the Proposal. While the Proposal stated that the Standard Terms "shall apply to any contract concluded" (DE # 1-1 at 12), this statement does not demonstrate that the parties ultimately entered into an agreement based on the Proposal. The terms of the Proposal were significantly altered by the parties' subsequent negotiations. LWR has not established that the parties intended to be bound by the remaining terms of the Proposal where there was such significant modification of those terms.

In support of its argument that the parties intended to be bound by the terms of the Proposal, LWR points to language in the Email where LWR's representative references the Proposal. (*See* DE # 1-2 at 2, "Our proposal says that you will have contractors on site to assist with the placement and complete connections."). While this reference to the Proposal could serve as evidence that the parties intended to be bound by the terms of the Proposal, Bio Town contends that when LWR sent Bio Town the

Draft Agreement, which explicitly attempted to incorporate the Proposal, Bio Town immediately objected. The evidence regarding mutual assent is, at best, a wash. Because LWR bears the burden of proving that the term was part of the agreement, it has not met its burden.

LWR's arguments also appear to invoke the incorporation doctrine. "For incorporation to occur, the incorporating contract must include a clear and explicit expression of intent to be bound by the auxiliary content. Mere reference to another contract is not enough. And simply attaching a document is neither necessary nor sufficient for incorporation." *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 754–55 (Ind. 2018) (internal citations omitted). The Email's reference to the Proposal did not clearly or explicitly express the parties' intent to be bound by the Proposal. Moreover, even if it did express such an intent, incorporation "may be partial—incorporating some parts of a separate agreement while leaving others unincorporated. And material referenced for a particular purpose is incorporated for that purpose only." *Id.* at 755 (internal citations omitted). Thus, even to the extent that the parties intended to be bound by the Proposal's requirement that Bio Town have contractors on site to assist with installation of the system, there is no indication that the parties intended to be bound by *all* of the provisions in the Proposal, including the forum-selection clause.

Finally, LWR points to a reference in the Email that the parties intended to enter into a forthcoming final contract. (DE # 1-2 at 2 "As I understand our conversation we are to proceed with the refurbished unit and have it available for pick up 45 days from

deposit/contract next Wednesday."). LWR's argument that the parties intended to be bound by a forthcoming final contract does little to resolve the present dispute. Under Indiana law, "[w]hether the parties intended to execute a subsequent written document is relevant to the determination of intent to be bound. Parties may make an enforceable contract which obligates them to execute a subsequent final written agreement. However, it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document." *Sands v. Helen HCI, LLC*, 945 N.E.2d 176, 180 (Ind. Ct. App. 2011) (internal citations omitted). "In other words, the document is understood to be a mere memorial of the agreement already reached and may not contain a material term that is not already agreed on." *Id.* "[M]ere reference to a more formalized contract does not void the presently existing agreement." *Wolvos v. Meyer*, 668 N.E.2d 671, 675 (Ind. 1996) (internal citation and quotation marks omitted).

Here, the parties agree that there was a valid contract as of March 1st, and LWR has not established that the parties did, in fact, enter into a subsequent final agreement. Therefore, the court considers the agreement as the parties intended it as of March 1st. At this time, LWR has not established that the terms of the Proposal, and specifically the forum-selection clause, were intended to be part of the parties' agreement. *See MPACT Const. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 907–10 (Ind. 2004) ("The problem in this case seems to have resulted from poor contract drafting and inadequate contract negotiations. Each side believed at the time of contract execution that the contract provided for what it wanted—in MPACT's case, for arbitration, and in

the Subcontractors' case, not for arbitration. Regardless, it is clear that arbitration was not sufficiently discussed by the parties. This leads to one conclusion, that there was no meeting of the minds between the parties on the issue of arbitration. Consequently, we find that there was no agreement to arbitrate[.]").

Ultimately, it was LWR's burden to establish that the forum-selection clause was part of the parties' agreement. It has not met that burden. Therefore, its motion to dismiss based on *forum non conveniens* will be denied.

## III.   CONCLUSION

For the foregoing reasons, the court **DENIES** defendant Livestock Water Recycling Inc.'s motion to dismiss. (DE # 15.) The court **TERMINATES** the referral of the motion to dismiss to the Magistrate Judge. (DE # 24.)

**SO ORDERED.**

Date: January 10, 2020

　s/James T. Moody　　　　　　　　　
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT